## Gluck v. Raesly

*Israel Krohn,* for plaintiff; *Francis E. Walter,* for defendant.

PER CURIAM, May 16, 1932.—Plaintiff in his statement claimed to recover $298.20 for publishing advertisements. The statement set out the following as the basis of the claim:

"Dec.  3    P3-60"   840L@ .09    R Brunswick .............. $75.60
        13    P8-60"   840L@ .09    R Bosch .................. 75.60
        13    P6-60"   840L@ .07    Sp Kellog ................ 58.80
Jan.  3    P4-70"   980L@ .09    R Brunswick .............. 88.20

"   $298.20"

Defendant in his affidavit of defense generously averred that the third item above should be $75.60, which would make the total claim $315, and he further averred "that he not only 'promised to pay plaintiff for the same,' but that he actually did pay plaintiff." He also avers that the dates of payment were December 13, 1929, and January 3, 1930. In his testimony, defendant stated that the above amount was paid by a check for $117.50, and cash paid January 7, 1930, $95. In other words, his total credit would only be $212.50. Having admitted that he owed the plaintiff's above advertising bill, and accepting his testimony as to the amount of payments, it is mathematically certain that the

verdict in this case would have to be for the plaintiff for the difference between the two amounts. Looking at the matter from another point of view, we find on the trial that exhibits Nos. 1, 2, 3 and 4 were shown to Raesly, and it would appear from the exhibits that the amount of the bills was, as averred in the affidavit of defense, $315, but the defendant testified that he only owed fifty per cent. of this amount, which would be $157.50. If that statement is true, then defendant overpaid plaintiff to the extent of $55. It was this testimony that led the trial judge to express his opinion as to the unethical character of the transaction. What was there said, however, was founded upon defendant's admission, and upon plaintiff's attempted explanation of why the bills were marked paid, and was a proper comment. Statements of that kind by the court are permissible as long as they are not to be binding on the jury, and the trial judge expressly said, "but the question after all is for you, not one of morals or of ethics, but was the bill paid by Raesly." Whether the evidence favors the defendant's theory or the plaintiff's as to the amounts of the bills rendered the Radio Advertising Company, nevertheless, as the trial judge said on the trial and in the charge, the figures in this case will not fit the conclusion that a verdict for the defendant is supported by the evidence. Again, the defendant relies upon the check, exhibit No. 5, dated December 27, 1929, for $117.50, defendant's check No. 509. Exhibit No. 6 plainly shows that that check was given in payment of the November bills as follows:

"Nov. 1 .............................................. $24.00
Nov. 8 .............................................. 24.00
Nov. 15 .............................................. 30.00
Nov. 22 .............................................. 30.00
Nov. 29 .............................................. 9.50

"$117.50"

At the bottom of exhibit No. 6 is "E 76 P 1. Ch. No. 509 12/27/29," showing plainly that defendant's testimony is not true; that the check was not to pay any part of the claim in the statement, which, in his affidavit of defense, he admits was for work done. The trial judge charged the jury correctly, that where the defense was payment, the burden was on the defendant to show that the claim had, in fact, been paid, but in this case the evidence does not prove the payment, nor does it tend to prove it. In fact, exhibit No. 6 shows plainly that the check for $117.50 was not paid for the December bills, but for the November bills. When it comes to the cash payment, $95, the plaintiff testified that the defendant had never paid him in cash at any time; that it was always by check, no matter how small the amount. The defendant testified to the cash payment. Even if the jury would believe him as to that, there would be still, under the evidence and the pleadings, $220 due the plaintiff. This case is not one where it is a mere question of credibility between the parties. If it was that kind of a case, the court would let the verdict stand unless it "shocked the conscience of the court." That is the rule we have uniformly followed, but this case is one where upon the trial the figures were not followed, and where the issue became confused by not holding the defendant down to what became apparent from his admissions in the pleadings and his own testimony. By the plain application of mathematics, the verdict is incorrect. To let such a verdict stand would not only be a "shock to the conscience of the court," but would be an insult to the intelligence of all parties concerned.

And now, May 16, 1932, rule for a new trial made absolute. Case is directed to be put at the head of the appeal list for October.

From Henry D. Maxwell, Easton, Pa.